UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION



FILED

APR 1 3 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>    Plaintiff,<br><br>    v.<br><br>Portfolio Recovery Associates, LLC,<br><br>    Defendant. | Case No. 2:23-cv-110<br><br>**STIPULATED FINAL JUDGMENT AND ORDER** |

The Consumer Financial Protection Bureau (Bureau) commenced this civil action on March 23, 2023 to obtain injunctive and monetary relief and civil penalties from Portfolio Recovery Associates, LLC (Defendant, as defined below). The Complaint alleges that, in connection with its debt collection and furnishing activities, Defendant violated sections 1031(a) and 1036(a)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a)(1); sections 623(a)(8)(E)-(F) and 623(b)(1) of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681s-2(a)(8)(E)-(F), (b); sections 1022.42 and 1022.43 of Regulation V, 12 C.F.R. §§ 1022.42-1022.43; and sections 807 and 814 of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e, 1692*l*.

The Bureau and Defendant agree to entry of this Stipulated Final Judgment and Order (Order), without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

## FINDINGS

1.    This Court has jurisdiction over the parties and the subject matter of this action.

2.      Defendant neither admits nor denies any allegations in the Complaint except as specified in this Order. For purposes of this Order, Defendant admits the facts necessary to establish the Court's jurisdiction over it and the subject matter jurisdiction related to the Lawsuit Subject Matter.

3.      Defendant waives service under Rule 4(d) of the Federal Rules of Civil Procedure and waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order and any claim it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

4.      Entry of this Order is in the public interest.

### DEFINITIONS

5.      The following definitions apply to this Order:

    a.      "2015 Order" means the administrative order the Bureau issued against Portfolio Recovery Associates, LLC on September 9, 2015, entitled *In re Portfolio Recovery Associates, LLC*, 2015-CFPB-0023 (Sept. 9, 2015).

    b.      "Board" means the duly-elected and acting Board of Directors of Defendant's parent company, PRA Group, Inc.

    c.      "Charge-off" means the treatment of a receivable balance by a Creditor as a loss or expense because payment is unlikely.

    d.      "Charge-off Balance" means the amount alleged due on an account receivable at the time of Charge-off.

    e.      "Claimed Amount" means the amount Defendant claims is owed at the moment of Collecting.

2

      f.     "Clear and Conspicuous" means readily understandable and:

          i.     in the case of written and electronic disclosures, the location and type size also must be readily noticeable and legible to consumers; and

          ii.    in the case of oral disclosures, the disclosures also must be given at a volume and speed sufficient for the consumer to hear and comprehend them. 12 C.F.R. § 1006.34(b)(1).

      g.     "Collection" or "Collecting" or "Collect" means making a representation, expressly or by implication, that a Consumer owes a Debt or about the amount of the Debt or otherwise taking any action with a Consumer in furtherance of obtaining payment for a Debt, excluding Collection activity authorized by Title 11 of the United States Code.

      h.     "Consumer" means any natural person obligated or allegedly obligated to pay any Debt. 15 U.S.C. § 1692a(3).

      i.     "Consumer Reporting Agency" or "CRA" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity "which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

      j.     "Covered Dispute" means (a) any written or oral dispute concerning the accuracy or validity of a Debt submitted directly to Defendant or a Law Firm

3

that includes sufficient information to identify the account or other relationship that is in dispute (including but not limited to any Direct Dispute); and (b) any Indirect Dispute.

k.   "Creditor" means any person other than Defendant who offers or extends credit creating a Debt or to whom a Debt is owed provided that the Debt was not in default at the time it was obtained by such person.

l.   "Debt" means any obligation or alleged obligation of a Consumer to pay money arising out of a transaction in which the money, property, insurance or services that are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. 15 U.S.C. § 1692a(5).

m.   "Debt Collection Lawsuit" means any lawsuit filed by or on behalf of Defendant against any Consumer for the purpose of Collecting any Debt.

n.   "Defendant" means Portfolio Recovery Associates, LLC, and its successors and assigns.

o.   "Direct Dispute" means a dispute submitted directly to Defendant (1) by a consumer concerning the accuracy of any information contained in a consumer report and pertaining to an account or other relationship that the furnisher has or had with the consumer; and (2) at one of the following addresses: (i) the address of Defendant provided by Defendant and set forth on a consumer report relating to the Consumer; (ii) an address clearly and conspicuously specified by Defendant for submitting Direct Disputes that is provided to the Consumer in writing or electronically (if the Consumer has agreed to the electronic delivery of information from the furnisher); or (iii) any

business address of Defendant if Defendant has not so specified and provided an address for submitting Direct Disputes under (i) or (ii). 12 C.F.R. §§ 1022.41(b), 1022.43(c).

      p.    "Documents for Collecting" means all three of the following:

           i.    OALD that reflects (1) the consumer's name, (2) the last four digits of the account number assigned to the Debt by the Creditor that created or was awarded the OALD, and (3) the Lower OALD Amount or the amount of the Debt at the time (A) the Creditor Charged-off the Debt, (B) the Creditor or Defendant was awarded the judgment, or (C) Defendant purchased the Debt; and

           ii.    One of the following three:

                A.    If the OALD reflects the amount of the Debt at the time of Charge-off, judgment, or purchase:

                    1.    the transactional history of the Debt since Defendant's purchase that confirms the Claimed Amount equals the amount the Seller represented was owed at the time of Defendant's purchase excluding all transactions related to the Debt since Defendant's purchase; and

                    2.    if the amount the OALD reflects is less than the amount the Seller represented was owed at Defendant's purchase: written confirmation by

5

Defendant that it has determined that any increases to the Debt after the date of the OALD were authorized by the agreement governing the Debt, which Defendant possesses, or were otherwise in accordance with applicable law; or

B. If the OALD reflects the amount of the Debt at the time of charge-off, judgment, or purchase; that amount is less than the amount the Seller represented was owed at Defendant's purchase; and Defendant seeks to Collect on the amount on the OALD:

1. the transactional history of the Debt since the date Defendant purchased the Debt that confirms the Claimed Amount equals the amount reflected on the OALD excluding all transactions related to the Debt since Defendant's purchase; or

C. If the OALD reflects the Lower OALD Amount:

1. the transactional history of the Debt since the date Defendant purchased the Debt that confirms the Claimed Amount equals the amount reflected on the OALD excluding all transactions related to the Debt since Defendant's purchase; and

iii.  For any increase to the Debt from the amount the Seller represented was owed after Defendant's purchase: an agreement governing the Debt that authorizes the increase unless Defendant has confirmed that such increase is otherwise in accordance with applicable law.

q.  "Effective Date" means the date on which this Order is entered by the Court.

r.  "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegate.

s.  "Exempted Letter" means any form letter Defendant coded, as of September 9, 2020, as 11, 211, 11A, 23, 12, 212, 12A, 9Q, 9QA, 9QN, 601, 602, 602A, D1, D13, D13A, D17A, D1A, D1N, D2, D2A, D3, D3A, D3AN, D3F, D3FA, D3N, D4, D4A, D4AN, D4N, D5, D5A, D5N, D6, D6A, D7, D7A, D7AN, D7N, D12, D12A, D16, or HRD.

t.  "Indirect Dispute" means a dispute submitted to a CRA by a consumer concerning the completeness or accuracy of information provided by Defendant to that CRA that is then forwarded to Defendant pursuant to 15 U.S.C. § 1681i(a)(2).

u.  "Law Firm" means those third-party law firms retained by Defendant for the purpose of conducting Collection activities on Defendant's behalf, including litigation.

v.  "Lawsuit Subject Matter" means allegations that Defendant violated (1) the CFPA by violating paragraphs 116, 119, 120, 125, and 126 of the 2015 Order

between September 9, 2015 and September 9, 2020; (2) the FDCPA and the CFPA by misrepresenting that it would provide within 30 days the documents specified in the form letter Defendant sent when initiating Legal Collections between September 9, 2015 and the Effective Date; and (3) the CFPA, FCRA, and Regulation V in connection with its practices for resolving Direct Disputes and Indirect Disputes between September 9, 2015 and the Effective Date.

   w. "Legal Collection" means any Collection efforts made by Defendant's internal legal department or a Law Firm to Collect a Debt owed or allegedly owed to Defendant, including sending letters on Law Firm letterhead and filing Debt Collection Lawsuits.

   x. "Lower OALD Amount" means an amount that (a) is reflected as owed on the Debt in OALD the Seller created within 60 days of Charge-off, and (b) is less than the amount that the Seller represents is owed on the Debt at the time of purchase by Defendant;

   y. "Original Account-Level Documentation" or "OALD" means:

     i. any documentation that a Creditor or that Creditor's agent (such as a servicer) provided to a Consumer about a Debt; or

     ii. a complete transactional history of a Debt created by a Creditor or that Creditor's agent (such as a servicer); or

     iii. a copy of a judgment awarded to a Creditor or awarded to PRA in a lawsuit filed on or after March 9, 2016.

   z. "Portfolio" means a collection of Debts sold to Defendant in a single transaction.

aa.    "Regional Director" means the Regional Director for the Southeast Region for the Office of Supervision for the Consumer Financial Protection Bureau, or his or her delegate.

bb.    "Related Consumer Action" means a private action by or on behalf of one or more consumers (not limited to Consumers, as defined) or an enforcement action by another governmental agency brought against Defendant based on the Lawsuit Subject Matter or substantially the same facts as described in the Complaint.

cc.    "Seller" means any entity that sells a Portfolio to Defendant.

dd.    "Service Provider" means any person that provides a material service to Defendant in connection with its debt Collection, dispute resolution, or furnishing activities. "Service Provider" does not include a person solely by virtue of such person offering or providing to Defendant (i) a support service of a type provided to businesses generally or a similar ministerial service; or (ii) time or space for an advertisement for a consumer financial product or service through print, newspaper, or electronic media. 12 U.S.C. § 5481(26).

ee.    "Time-Barred Debt" means a Debt that is beyond an applicable statute of limitations for a Debt Collection Lawsuit.

## CONDUCT PROVISIONS

## I

## <u>Prohibitions: Debt Collection Activity</u>

**IT IS ORDERED** that:

6.      Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

      a.      Violating §§ 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536 and §§ 807, 807(2)(A), 807(5), and 807(10) of the FDCPA, 15 U.S.C. § 1692e;

      b.      In connection with the Collection of Debt, using any false, deceptive, or misleading representation or means; and

      c.      In connection with the Collection more than 60 days after the Effective Date of a Debt purchased through an agreement executed after September 9, 2015, making, expressly or impliedly, any misrepresentation that is materially inconsistent with the Documents for Collecting relating to the Debt in Defendant's possession.

7.      Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined for 7 years after the Effective Date from:

      a.      Collecting on any Debt purchased through an agreement executed between September 9, 2015 and 60 days after the Effective Date without:

    i.    representations and warranties as to the accuracy or validity
          of the Debt; and

    ii.   a commitment to provide OALD during the time period in
          which Defendant is collecting the Debt, unless Defendant
          possesses within 90 days of the Effective Date OALD
          reflecting the Consumer's name and the Claimed amount of
          the Debt excluding any post Charge-off or post-judgment
          payments;

    b.    Collecting on any Debt purchased through an agreement executed
more than 60 days after the Effective Date without:

          i.    a commitment from the Seller to provide the following
                documents for any individual Debt in the Portfolio
                (Promised Documents) within either 90 days of closing or 60
                days of Defendant's request:

                1.  OALD that reflects (1) the Consumer's name, (2)
                    the last four digits of the account number assigned
                    to the Debt by the Creditor that created or was
                    awarded the OALD, and (3) Lower OALD Amount
                    or the amount of the Debt at the time of purchase
                    by Defendant, Charge-off, or judgment;

                2.  if any increase to the Debt has been or will be
                    imposed after the date of the OALD, an agreement
                    governing the debt that authorizes the increase,

unless Defendant has confirmed that such increase is in accordance with applicable law; and

3. if Defendant is not restricted in the purchase agreement from engaging in Legal Collection of the Debt, all documents Defendant would need to engage in Legal Collections or file a Debt Collection Lawsuit; and

ii. representations and warranties sufficient to establish that each Debt is accurate and valid;

*provided that,* in the event that Seller commits to provide the Promised Documents but does not commit to do so within either 90 days of closing or 60 days of Defendant's request: Defendant may Collect on the Debt for 90 days after closing, at which time, if Defendant does not possess all Promised Documents identified in paragraphs 7(b)(i)(1)-(2), then (excepting any Debt for which the Consumer has entered into a payment plan for an amount less than the Claimed Amount) Defendant must cease Collecting until it possesses all Promised Documents; and, if Defendant is not in possession of all Promised Documents within 365 days of closing, Defendant must permanently cease Collecting on the Debt, inform the Consumer that it has ceased Collecting on the Debt, and delete any tradelines associated with

information about the Debt that Defendant furnished to a
CRA;

    c.    After a consumer submits a Covered Dispute more than 60 days
after the Effective Date, Collecting on the Debt until Defendant possesses and has
reviewed Documents for Collecting, *except that,* when a Consumer affirmatively
contacts Defendant about a Debt or as required by law, Defendant may
communicate with and accept payment from the Consumer if Defendant Clearly
and Conspicuously discloses to the Consumer that Defendant is investigating the
accuracy and validity of the Debt and the Consumer may not owe the Debt;

    d.    Collecting any Time-Barred Debt through litigation, arbitration, or
any other Legal Collections;

    e.    Collecting any Time-Barred Debt through any means, including but
not limited to telephone calls and written communications, without:

        i.    For those Time-Barred Debts that cannot generally be
included in a consumer report under the provisions of the
FCRA, 15 U.S.C. § 1681c(a), Clearly and Conspicuously
disclosing to the Consumer: "The law limits how long you
can be sued on a debt and how long a debt can appear on
your credit report. Due to the age of this debt, we will not sue
you for it or report payment or non-payment of it to a credit
bureau;" and

        ii.    For all other Time-Barred Debts, Clearly and Conspicuously
disclosing to the Consumer: "The law limits how long you

can be sued on a debt. Because of the age of your debt, we

will not sue you for it;"

*provided that*, Defendant will be deemed to have complied with this

disclosure requirement if it makes a disclosure to a Consumer in a

specific jurisdiction that (1) complies with the laws or regulations of

that jurisdiction, and (2) is substantially similar to the disclosure

required by this paragraph;

    f.      Making any representation or statement, or taking any other action

that interferes with, detracts from, contradicts, or otherwise undermines the

disclosures required in Paragraph 7(e);

    g.      Engaging in any Legal Collections, other than post-judgment Legal

Collections, on any account placed into Legal Collections more than 60 days after

the Effective Date unless Defendant possesses:

    i.      Documents for Collecting;

    ii.      A chronological listing of the names of all prior owners of the

Debt and the date of each transfer of ownership of the Debt,

beginning with the name of the Creditor at the time of

Charge-off;

    iii.      Each bill of sale or other document that evidences the

transfer of ownership of the Debt at the time of Charge-off to

each successive owner, including Defendant, and specifically

refers to the particular Debt that Defendant is Collecting,

which can be done by referencing an exhibit attached to each

bill of sale or other document transferring ownership of the

14

Debt that is represented or warranted by a Seller to be a list of all Debts acquired in that Portfolio; and

iv.　　Either (1) a document signed by the Consumer evidencing the opening of the account forming the basis for the Debt; or (2) OALD reflecting a purchase or payment;

h.　　Initiating any Debt Collection Lawsuit in which Defendant is suing under a breach of contract claim unless Defendant possesses the contractual terms and conditions applicable to the Debt.

## II

## Affirmative Requirements: Debt Collection

**IT IS FURTHER ORDERED** that Defendant and its Law Firms must take the following affirmative actions:

8.　　For any Debt purchased through an agreement executed more than 60 days after the Effective Date, any time the Seller commits to provide or provides OALD that reflects the Lower OALD Amount but not the amount of the Debt at the time of purchase by Defendant, Charge-off, or judgment, then Defendant must (a) represent to both the Consumer and all CRAs to which it furnishes information about the Debt that the amount owed at the time of Defendant's purchase is the Lower OALD Amount; and (b) Collect on the Debt consistent with those representations.

9.　　In all written communications with a Consumer made in connection with any Legal Collections on any account placed into Legal Collections more than 60 days after the Effective Date, other than while a Debt Collection Lawsuit is ongoing or if Defendant has obtained a judgment on the Debt, Defendant and its Law Firms must

15

include a Clear and Conspicuous statement (a) that (i) the Consumer may request, orally or in writing, copies of all documents that Defendant must possess pursuant to Paragraph 7(g), identifying each category of document, and (ii) Defendant will provide these documents "within 30 days of request at no cost" unless Defendant has provided the documents within the previous year; and (b) that if Defendant sues under a breach of contract theory, Defendant will provide the contractual terms and conditions governing the Debt within 30 days of effecting service of the complaint on the Consumer, unless PRA has already provided the Consumer the contractual terms and conditions in response to a request for documents made after PRA initiated Legal Collections.

10. Unless Defendant has already provided documents to the Consumer in the previous year, any time a Consumer with a Debt in Legal Collections for which a judgment has not been issued requests any document relating to that Debt, Defendant must, within 30 days of the request and at no cost to the Consumer, provide all documents that Defendant must possess pursuant to paragraph 7(g), excluding from the bill of sale or other document that evidences the transfer of ownership any information specific to Debts for Consumers other than the Consumer who made the request.

11. Any time that Defendant sues under a breach of contract theory, Defendant must, within 30 days of effecting service of the complaint on the Consumer and at no cost to the Consumer, provide the contractual terms and conditions governing the Debt to the Consumer.

12. Whenever a Consumer with a Debt in Legal Collections for which a judgment has not been issued requests any documents relating to that Debt, Defendant

must track (a) the date of the request; (b) the date that Defendant provided the documents; and (c) the exact documents Defendant provided.

## III

## Prohibitions: Dispute Resolution Activity

**IT IS FURTHER ORDERED** that:

13. Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from:

  a.   violating §§ 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536 and §§ 623(a)(8) and 623(b) of FCRA, 15 U.S.C. §§ 1681s-2(a)(8), (b), and §§ 1022.42 and 1022.43 of Regulation V, 12 C.F.R. §§ 1022.42-1022.43; and

  b.   when a consumer submits a Direct Dispute or Indirect Dispute alleging fraud or ID theft, resolving the Direct or Indirect Dispute in Defendant's favor based solely on the facts that (a) Defendant possesses OALD reflecting the name and Claimed Amount, (b) the Consumer did not provide a fraud affidavit, police report, or other document evidencing fraud accepted by Defendant, and (c) the Consumer made a past payment on the Debt to Defendant or a previous owner or servicer of the Debt.

## IV

## Affirmative Requirements: Dispute Resolution Activity

**IT IS FURTHER ORDERED** that Defendant must take the following affirmative actions:

17

14.     Whenever a Consumer submits to Defendant a Direct Dispute that does not include (a) sufficient information to identify the account or other relationship that is in dispute, such as an account number and the name, address, and telephone number of the Consumer, if applicable; (b) the specific information that the Consumer is disputing and an explanation of the basis for the dispute; and (c) all supporting documentation or other information reasonably required by the furnisher to substantiate the basis of the dispute, Defendant must either (1) comply with all requirements in 12 C.F.R. § 1022.43(e)(1)-(4), or (2) within five business days of determining that the written dispute does not contain all information identified in (a)-(c), above, provide the Consumer with a frivolous or irrelevant determination notice that complies with 12 C.F.R. § 1022.43(f)(2)-(3).

## COMPLIANCE PROVISIONS

### V

### Compliance Plan

**IT IS FURTHER ORDERED** that:

15.     Within 60 days of the Effective Date, Defendant must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendant's Debt Collection, dispute resolution, and furnishing practices comply with all applicable Federal consumer financial laws and the terms of this Order (Compliance Plan). Provided that the following requirements concerning Service Providers are limited to Service Providers that offer Defendant a Consumer-facing service, the Compliance Plan must include, at a minimum:

18

a.  detailed steps for addressing each action required by this Order;

b.  policies and procedures that ensure Defendant's compliance with §§ 623(a)(8) and (b) and 623 of FCRA, 15 U.S.C. §§ 1681s-2(a)(8), (b); §§ 1022.42 and 1022.43 of Regulation V, 12 C.F.R. §§ 1022.42-1022.43; § 807 of the FDCPA, 15 U.S.C. § 1692e; and the requirements of this Order;

c.  internal audits and monthly monitoring designed to identify and promptly correct any violations of FCRA, Regulation V, the FDCPA, or this Order;

d.  templates for any documents or scripts that Defendant will use to provide the statements required by Paragraphs 7 and 9;

e.  detailed steps for ensuring that Defendant accurately identifies and tracks the applicable statute of limitations of all Debts on which Defendant Collects and that Defendant records any time it discovered it has tracked a statute of limitations date later than the applicable statute of limitations for a Debt;

f.  enhanced policies, procedures, and a program for Law Firm and Service Provider oversight that ensures that Defendant's Law Firms and Service Providers do not, in connection with Collecting Debt on Defendant's behalf, violate this Order, Defendant's policies and procedures, their contracts with Defendant, and any other applicable Federal consumer financial protection laws, including through the following:

i.  prior to entering into a contract with a Law Firm or Service Provider, ensure that the Law Firm or Service Provider has the ability to perform its obligations in compliance with this Order, Defendant's policies and procedures, its contract with Defendant, and all other applicable Federal consumer financial laws;

19

ii.  for new and renewed contracts, obtain a written contract with the Law Firm or Service Provider that sets forth the responsibilities of each party, including:

1. the Law Firm's or Service Provider's specific performance responsibilities and duty to maintain adequate internal controls;

2. the Law Firm's or Service Provider's duty to provide adequate training on compliance with the relevant provisions of this Order, Defendant's relevant policies and procedures, its contract with Defendant, and all other applicable Federal consumer financial laws;

3. the Law Firm's or Service Provider's duty to alert Defendant whenever a Consumer submits a Covered Dispute or asserts a defense to a Debt Collection Lawsuit or arbitration;

4. Defendant's authority to conduct periodic reviews of the Law Firm's or Service Provider's controls, performance, and information systems related to Debt Collection on behalf of Defendant;

5. Defendant's right to terminate the contract if the Law Firm or Service Provider fails to comply with the terms specified in the contract; and

iii.     conduct a periodic review of the Law Firm's or Service Provider's controls, performance, and information systems related to Debt Collections;

g.     an effective consumer complaint and Covered Disputes document retention and monitoring process, including the maintenance of records of all complaints and Covered Disputes and the resolution of the complaints and Covered Disputes;

h.     training, supervision, and monitoring that ensures compliance with §§ 623(a)(8) and (b) and 623 of FCRA, 15 U.S.C. §§ 1681s-2(a)(8), (b); §§ 1022.42 and 1022.43 of Regulation V, 12 C.F.R. §§ 1022.42-1022.43; § 807 of the FDCPA, 15 U.S.C. § 1692e; the requirements of this Order, and Defendant's policies and procedures;

i.     an internal annual audit of Defendant's compliance with and Defendant's policies and procedures relating to compliance with this Order, the CFPA, the FDCPA, and FCRA; and

j.     specific timeframes and deadlines for implementation of the steps described above.

16.     The Enforcement Director will have the discretion to make a determination of non-objection to the Compliance Plan or direct Defendant to revise it. If the Enforcement Director directs Defendant to revise the Compliance Plan, Defendant must revise and resubmit the Compliance Plan to the Enforcement Director within 30 days.

17.     After receiving notification that the Enforcement Director has made a determination of non-objection to the Compliance Plan, Defendant must implement and

adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

## VI

## Role of the Board

**IT IS FURTHER ORDERED** that:

18.    The Board must review all submissions (including plans, reports, programs, policies, and procedures) required by this Order prior to submission to the Bureau.

19.    Although this Order requires Defendant to submit certain documents for review or non-objection by the Bureau, the Board will have the ultimate responsibility for proper and sound management of Defendant and for ensuring that Defendant complies with the laws that the Bureau enforces, including Federal consumer financial laws and this Order.

20.    In each instance that this Order requires the Board to ensure adherence to, or perform certain obligations of Defendant, the Board must:

a.    authorize whatever actions are necessary for Defendant to fully comply with this Order;

b.    require timely reporting by management to the Board on the status of compliance obligations; and

c.    require timely and appropriate corrective action to remedy any material non-compliance with any failures to comply with Board directives related to this Section.

## MONETARY PROVISIONS

### VII

### Order to Pay Redress

**IT IS FURTHER ORDERED** that:

21.     Within 10 days of the Effective Date, Defendant must reserve or deposit into a segregated deposit account an amount not less than $12.18 million (Payment Floor) for the purpose of providing the following redress to the following consumers (Redress Consumers):

      a.    **Seller 1 OALD Consumers**: Any Consumer who submitted a written or oral dispute between March 7, 2016 and September 9, 2020 regarding the accuracy or validity of a Debt that Defendant purchased from Seller 1 as identified in the Redress Plan (regardless of purchase date) that Defendant resolved without reviewing (i) OALD reflecting the Consumer's name and the amount Defendant claimed was owed at the time of Collecting excluding any payments on, credits to, or increases to the Debt since Charge-off or judgment, and (ii) if the amount Defendant claimed was owed at the time of Collecting was higher than the Charge-off or judgment amount, the terms and conditions that provided the legal basis for increasing the Debt amount, and documentation that the increase was in conformity with the terms and conditions.

          i.    Defendant will refund the amount paid on the Debt since the receipt of said dispute to each Seller 1 OALD Consumer.

      b.    **Dispute Communication Consumers**: Any Consumer to whom Defendant represented, between March 7, 2016 and September 9, 2020, through any communication other than an Exempted Letter or a telephonic

23

communication in which the Consumer called Defendant or Defendant's agent, the validity or amount of an unsubstantiated Debt during the period between when Defendant received a dispute about the accuracy or validity of the Debt and when Defendant reviewed (i) OALD reflecting the Consumer's name and the amount Defendant claimed was owed at the time of Collecting excluding any payments on, credits to, or increases to the Debt since Charge-off or judgment, and (ii) if the amount Defendant claimed was owed at the time of Collecting was higher than the Charge-off or judgment amount, the terms and conditions that provided the legal basis for increasing the Debt amount, and documentation that the increase was in conformity with the terms and conditions.

      i.    Defendant will refund each Dispute Communication Consumer the amount paid on the Debt between when Defendant received the dispute and when Defendant reviewed either (i) OALD reflecting the Consumer's name and the Debt's Claimed Amount excluding any post-charge-off or post-judgment payments, or (ii) if the Claimed Amount was higher than the charge-off or judgment amount, OALD reflecting the Charge-Off Balance or judgment balance and terms and conditions that provided the legal basis and the methodology for increasing the charge-off amount.

    c.    **Legal Collections Letter Consumers**: Any Consumer (1) to whom Defendant sent a form letter when initiating Legal Collections between March 7, 2016 and September 9, 2020 (Initial Legal Letter); (2) who requested in writing documents from Defendant after receiving the Initial Legal Letter; and

(3) to whom Defendant did not provide, within 30 days of receipt of the document request, both (a) OALD reflecting name and Claimed Amount excluding any post-charge-off or post-judgment payments, or, if the Claimed Amount was higher than the Charge-off or judgment amount, OALD reflecting the Charge-Off Balance or judgment balance and an explanation of how the Claimed Amount was calculated and why such increase is permitted by agreement or applicable law; and (b) either a signed account application or account statements reflecting a purchase or payment by the Consumer.

    i.  Defendant will refund each Legal Collections Letter Consumer the amount paid on the Debt for which the Consumer requested documents since the date of such request.

  d.  **T&C Possession Consumers**: Any Consumer against whom Defendant initiated a Debt Collection Lawsuit between March 7, 2016 and September 9, 2020 where that Debt Collection Lawsuit included a breach of contract claim, when, at the time of filing the lawsuit, Defendant did not possess the contractual terms and conditions applicable to the Debt.

    i.  For each T&C Possession Consumer, Defendant (i) will refund or provide certified documentation that it has already refunded the Consumer the amount paid on the Debt since initiation of the Debt Collection Lawsuit; (ii) cease Collecting on the Debt; and (iii) either move to dismiss the Debt Collection Lawsuit (when no judgment was entered), file a satisfaction of judgment for the Debt Collection Lawsuit

(when judgment was already entered), or prove that it has already taken such action.

    e.    **Time-Barred Lawsuit Consumers**: Any Consumer against whom Defendant initiated a Debt Collection Lawsuit between December 8, 2015 and September 9, 2020 on a Time-Barred Debt.

        i.    For each Time-Barred Lawsuit Consumer, Defendant (i) will refund or provide certified documentation that it has already refunded the Consumer the amount paid on the Debt since initiating the Debt-Collection Lawsuit; (ii) cease Collecting on the Debt; and (iii) either move to dismiss the Debt Collection Lawsuit (when no judgment was entered), file a satisfaction of judgment for the Debt Collection Lawsuit (when judgment was already entered), or prove that it has already taken such action.

Defendant may reduce this reserve or the deposit by the amount of any restitution Defendant made prior to the Effective Date that complies with the requirements of this Stipulated Judgment, for the purpose of providing redress to Affected Customers as required by this paragraph. The Redress Plan shall allow for a reduction in the amount of any payments previously refunded to a Redress Consumer by Defendant prior to the Effective Date.

    22.    Within 60 days of the Effective Date, Defendant must submit to the Enforcement Director for review and non-objection a comprehensive written plan for providing redress consistent with this Order (Redress Plan). The Enforcement Director will have the discretion to make a determination of non-objection to the Redress Plan or

direct Defendant to revise it. If the Enforcement Director directs Defendant to revise the Redress Plan, Defendant must revise and resubmit the Redress Plan to the Enforcement Director within 14 days. After receiving notification that the Enforcement Director has made a determination of non-objection to the Redress Plan, Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Redress Plan.

23.     The Redress Plan must apply to all Redress Consumers and, at a minimum:

a.     describe how Defendant will identify the Redress Consumers and identify when it will specify the names and account numbers of the Redress Consumers;

b.     describe how Defendant will allocate redress to Redress Consumers and identify when Defendant will specify the exact amounts it will allocate to the Redress Consumers;

c.     detail how redress will be provided to Redress Consumers, including detailing how payments will be made to probate or bankruptcy estates in accordance with applicable law; and

d.     detail the reasonable efforts that Defendant will undertake to locate consumers to whom redress should be provided and verify their addresses before providing redress.

24.     The Redress Plan must include: (1) the form of the letter (Redress Notification Letter) to be sent notifying Redress Consumers of the redress; and (2) the form of the envelope that will contain the Redress Notification Letter. The letter must include language explaining how the amount of redress was calculated and a statement

that the provision of the refund payment complies with the terms of this Order. Defendant may not include in any envelope containing a Redress Notification Letter any materials other than the approved letters and redress checks.

25.    Defendant must provide all relief to Redress Consumers required by this Order, regardless of whether the total of that relief exceeds the amount reserved or deposited into a segregated account under this Section. After completing the Redress Plan, if the amount of redress provided to the Redress Consumers is less than $12.18 million, then within 30 days of the completion of the Redress Plan, Defendant must pay to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions, the difference between the amount of redress provided to the Redress Consumers and $12.18 million.

26.    The Bureau may use these remaining funds to pay additional redress to Redress Consumers. If the Bureau determines, in its sole discretion, that additional redress to Redress Consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after the additional redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Defendant will have no right to challenge any actions that the Bureau or its representatives may take under this section.

27.    Defendant may not condition the payment of any redress to any Redress Consumer under this Order on that Redress Consumer waiving any right.

28.    Defendant's internal audit department must determine compliance with the Redress Plan.

29.    Defendant's internal audit department must prepare a detailed written report of its assessment of Defendant's compliance with the terms of the Redress Plan

(the Redress Report). The Redress Report must include an assessment of the Redress Plan and the methodology used to determine the population of Redress Consumers, the amount of redress for each Redress Consumer, the procedures used to issue and track redress payments, and the work of any independent consultants that Defendant has used to assist and review its execution of the Redress Plan.

30.     Defendant must submit the Redress Report to the Enforcement Director and the Board within 90 days after Defendant completes implementation of the Redress Plan.

# VIII

## Order to Pay Civil Money Penalty

**IT IS FURTHER ORDERED** that:

31.     Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Complaint and continuing until the Effective Date, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant must pay a civil money penalty of $12 million to the Bureau.

32.     Within 10 days of the Effective Date, Defendant must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

33.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

34.     Defendant must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant may not:

a.      claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

b.      seek or accept, directly or indirectly, reimbursement or indemnification from any source, including payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

## IX

## Additional Monetary Provisions

**IT IS FURTHER ORDERED** that:

35.     In the event of any default on Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

36.     Defendant relinquishes all dominion, control, and title to the funds paid under this Order to the fullest extent permitted by law and no part of the funds may be returned to Defendant.

37.     Under 31 U.S.C. § 7701, Defendant, unless it already has done so, must furnish to the Bureau its taxpayer-identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

38.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant must notify the Enforcement Director of the final

judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant may not argue that it is entitled to, nor may Defendant benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## ADDITIONAL PROVISIONS

### X

### Reporting Requirements

**IT IS FURTHER ORDERED** that:

39. Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or

practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant; or a change in Defendant's name or address. Defendant must provide this notice at least 30 days before the development or as soon as practicable after the learning about the development, whichever is sooner.

40.     Within 7 days of the Effective Date, Defendant must:

      a.     designate at least one telephone number and email, physical, and postal addresses as points of contact that the Bureau may use to communicate with Defendant;

      b.     identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; and

      c.     describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales.

41.     Defendant must report any change in the information required to be submitted under Paragraph 40 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

42.     Within 90 days of receiving notice of non-objection to the Compliance Plan, and again each year for 5 years after receiving notice of non-objection to the Compliance Plan, Defendant must submit to the Regional Director an accurate written compliance progress report sworn to under penalty of perjury by the Board (Compliance Report), which, at a minimum:

      a.     lists each applicable paragraph and subparagraph of the Order and describes in detail the manner and form in which Defendant have complied with each such paragraph and subparagraph of this Order;

       b.    describes in detail the manner and form in which Defendant has complied with the Redress Plan and the Compliance Plan; and

       c.    attaches a copy of each order acknowledgment obtained under Section XI (Order Distribution and Acknowledgment), unless previously submitted to the Bureau.

## XI

## Order Distribution and Acknowledgment

**IT IS FURTHER ORDERED** that:

43.    Within 7 days of the Effective Date, Defendant must submit to the Regional Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

44.    Within 30 days of the Effective Date, Defendant must deliver a copy of this Order to each Board member and each of its executive officers, as well as to any managers, employees, customer-facing Service Providers, or other agents and representatives who have responsibilities related to the subject matter of the Order.

45.    For 7 years from the Effective Date, Defendant must deliver a copy of this Order to (i) any business entity resulting from any change in structure referred to in Section X (Reporting Requirements), (ii) any future board members and executive officers, and (iii) and any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

46.    Defendant must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the

requirements of the E-Sign Act, 15 U.S.C. §§ 7001-7006, within 45 days of delivery, from all persons receiving a copy of this Order under this Section.

47.     Within 90 days of the Effective Date, Defendant must provide the Bureau with a list of all persons and their titles to whom this Order was delivered through that date under Paragraphs 43-44 and confirmation that all recipients have acknowledged receipt.

## XII

## Recordkeeping

**IT IS FURTHER ORDERED** that:

48.     Defendant must create and maintain for at least 5 years from the Effective Date or 5 years after creation, whichever is longer, the following business records:

    a.     all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau; and

    b.     all documents and records pertaining to the Redress Plan, described in Section VII (Order to Pay Redress);

49.     Defendant must maintain for at least 7 years from the Effective Date or 7 years after creation, whichever is longer:

    a.     all documents identifying the results of the audits and monitoring required by Paragraph 15(c), and documents sufficient to show the work performed for the audits and other monitoring;

    b.     copies of all scripts, policies and procedures, training materials, advertisements, websites, and other marketing materials used in connection with

or otherwise related to debt Collection activities, including any such materials used by a third party on Defendant's behalf;

      c.    copies of all policies and procedures, training materials, and other instructional materials used in connection with or otherwise related to dispute resolution or the furnishing of information to CRAs;

      d.    all Covered Disputes, complaints, and requests for documents from Consumers (whether received directly or indirectly, such as through a third party); any responses to those disputes, complaints or requests; all account documents and information related to those disputes, complaints, and requests; and all documents and information used to resolve and respond to these disputes, complaints, and requests;

      e.    records showing, for each employee or agent providing services to Defendant related to debt Collection or furnishing, that person's: name; telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination; and

      f.    records showing, for each Service Provider providing Consumer-facing services related to debt Collection or furnishing, the name of a point of contact, and that person's telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

50.    Defendant must make all documents and other materials referenced in Paragraphs 48-49 available to the Bureau upon the Bureau's request.

# XIII

## Notices

**IT IS FURTHER ORDERED** that:

51.     Unless otherwise directed in writing by the Bureau, Defendant must provide all submissions, requests, communications, or other documents relating to this Order in writing, with subject line, "*CFPB v. Portfolio Recovery Associates, LLC*, Case No. [Docket #]," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Enforcement Director
> Consumer Financial Protection Bureau
> 1700 G Street, NW
> Washington, DC 20552

> Regional Director, Southeast Region
> Consumer Financial Protection Bureau
> Peachtree Summit Building
> 401 W. Peachtree Street
> Atlanta, GA 30308

# XIV

## Cooperation with the Bureau

**IT IS FURTHER ORDERED** that:

52.     Defendant must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Redress Consumer. Defendant must provide such information in its or its agents' possession or control within 14 days of receiving a written request from the Bureau.

53.     Defendant must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the Lawsuit Subject Matter. Defendant must provide truthful and complete information, evidence, and testimony.

Defendant must cause its officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XV

## Compliance Monitoring

**IT IS FURTHER ORDERED** that:

54.     Within 14 days of receipt of a written request from the Bureau, Defendant must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

55.     Defendant must permit Bureau representatives to interview any employee or other person affiliated with Defendant who has agreed to such an interview regarding: (a) the Lawsuit Subject Matter; or (b) compliance with this Order. The person interviewed may have counsel present.

56.     Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

## XVI

## Transfer or Assignment of Operations

57.     Should Defendant seek to transfer or assign all or part of its operations that are subject to this Order, Defendant must, as a condition of sale, obtain the written agreement of the transferee or assignee to comply with all applicable provisions of this Order.

## XVII

### Release

58.     The Bureau releases and discharges Defendant from any and all potential liability for claims arising out of the Lawsuit Subject Matter or the allegations of the Complaint, to the extent such conduct occurred before the Effective Date and the Bureau knows about it as of the Effective Date. The Bureau may use the practices described in the Complaint in future enforcement actions against Defendant and its affiliates, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations or to calculate the amount of any penalty. This release does not preclude or affect any right of the Bureau to determine and ensure compliance with this Order, or to seek penalties for any violations of this Order.

## XVIII

### Retention of Jurisdiction

**IT IS FURTHER ORDERED** that:

59.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

**IT IS SO ORDERED.**

DATED this 12ᵗʰ day of April , 2023.

Hon. James K. Walker

United States District Judge

38

Consented and agreed to:

FOR PLAINTIFF THE CONSUMER FINANCIAL PROTECTION BUREAU

ERIC HALPERIN
*Enforcement Director*

DEBORAH MORRIS
*Deputy Enforcement Director*

MICHAEL FAVRETTO
*Assistant Litigation Deputy*

*Kara Killilw* [1]
KARA K. MILLER (VA Bar No. 47821)
*Assistant Litigation Deputy*
JOANNA SHALLECK-KLEIN (CA Bar No. 275686)
*Senior Litigation Counsel*
RENÉE S. ORLEANS (MD Bar)
*Senior Litigation Counsel*
1700 G Street, NW
Washington, DC 20552
Email: kara.miller@cfpb.gov
Email: joanna.shalleck-klein@cfpb.gov
Email: renee.orleans@cfpb.gov
Tel.: (202) 435-7825 (Miller)
Tel.: (202) 435-9095 (Shalleck-Klein)
Tel: (202) 435-7271 (Orleans)
Fax: (202) 435-7329

Attorneys for Plaintiff Consumer Financial Protection Bureau

FOR DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC

*Noam Kutler*
NOAM KUTLER (VA Bar No. 82316)
ERIC MOGILNICKI (DC Bar No. 443682)
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Email: nkutler@cov.com
Email: emogilnicki@cov.com
Tel: (202) 662-5587 (Kutler)
Tel.: (202) 662-5584 (Mogilnicki)

Attorneys for Defendant Portfolio Recovery Associates, LLC

[1] Original signatures can be delivered to the Court upon request.